## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| GEORGE JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-368J |
| | ) | |
| | ) | |
| CHERYL WADAS and WADAS LAW | ) | |
| OFFICE, and ABBY SHADAKOFSKY, dba | ) | |
| Personal Collection Service, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING "DEFENDANTS CHERYL WADAS AND WADAS LAW OFFICE'S MOTION FOR SUMMARY JUDGMENT"

The Motion for Summary Judgment filed by defendants Cheryl Wadas and Wadas Law Office (hereafter "Wadas") (Docket Entry 20) and the plaintiff's response in opposition to the motion (Docket Entry 23) have come before the Court for consideration.  A hearing on the motion was held September 11, 2012, at which counsel for Wadas and the pro se plaintiff appeared.  Upon

review of the defendants' motion, the plaintiff's response in opposition, all companion exhibits, and the arguments at the hearing, the Court finds that the defendants' motion should be granted.

## Background

August 19, 2011, defendant Abby Shadakofsky dba Personal Collection Services ("Shadakofsky") filed suit against plaintiff George James ("James") in the circuit court in the First Judicial District, State of Wyoming, seeking recovery of a debt claimed to be owed by James to Medicine Wheel Acupuncture.  James filed a counterclaim against Shadakofsky in the circuit court action alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and a claim for intentional infliction of emotional distress. Shadakofsky failed to timely respond and a default judgment was entered against her.  Thereafter, she sought counsel, Wadas, to represent her in the circuit court proceeding.  Wadas states that she did not know of the default judgment, and thus filed an untimely answer/reply to the counterclaim. Additionally, she served James with amended initial disclosures on behalf of Shadakofsky.  In those disclosures, damages were stated to be in the principal amount of $1,063.00, $70.00 for service fees and costs and estimated legal

2

fees in the amount of $3,000.00.  James later filed discovery requests asking about computation of legal fees.  Wadas, as counsel for Shadakofsky, responded they had been estimated in error. James filed the instant action prior to conclusion of the circuit court action.  He again asserts causes of action for violations of the FDCPA and vicarious liability against Shadakofsky based upon the acts of Wadas.  Specifically, he has asserted that the Act was violated when: 1) Wadas stated in the circuit court action that underlying legal fees were estimated to be $3,000 when the underlying debt did not provide for the recovery of legal fees; 2) by serving and filing an untimely reply to his counterclaim; and 3) serving discovery requests in the circuit court action, including discovery relating to his counterclaim.

In the motion now before this Court, Wadas claims entitlement to summary judgment, asserting that the FDCPA does not apply to Wadas and Wadas Law Office because they are not debt collectors within the meaning of the Act.  James opposes the motion.  The Court agrees with the Wadas defendants and finds that summary judgment should be granted in their favor.

## Standard of Review

The Tenth Circuit stated in <u>Simms v. Oklahoma ex rel. Mental Health and</u>

Substance Abuse Services, 165 F.3d 1321, 1326 (10th Cir. 1999):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. See Byers, 150 F.3d at 1274.
>
> Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. See, e.g., Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Id. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). If there is no genuine issue of material fact in dispute, we determine whether the district court correctly applied the substantive law. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

Further, as the district court stated in Hightower-Henne v. Gelman, Slip Copy, 2012 WL 95208, *3 (D.Colo. 2012), "[w]hen ruling on a motion for summary judgment, a court may consider only admissible evidence."

Finally, where a plaintiff proceeds pro se, his submissions must be construed liberally.  However, the Court may not act as his advocate. See Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Nor is the Court permitted

to invent arguments  for a pro se litigant.  See In re Antrobus, 563 F.3d 1092,

1099-1100 (10th Cir. 2009).


## Discussion

Title 15, Section 1692a(6) provides the following definition:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

5

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (I) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

The United States Supreme Court has held that the FDCPA applies to a lawyer who regularly, through litigation, tries to collect consumer debts. Heintz v. Jenkins, 115 S.Ct. 1489 (1995). The Court did not, however, go on to discuss what guides the determination as to when an attorney "regularly" engages in consumer debt collection activity. Various courts have addressed this issue, many of which are cited in the parties' moving papers. Recently, in Hightower-Henne v. Gelman, Slip Copy, 2012 WL 95208 (D.Colo. Jan. 12,

6

2012), the Colorado district court said in a persuasive opinion:

> The FDCPA contains both a definition of "debt collector" and language describing certain categories of persons and entities excluded from the definition.  [FN9 omitted] Thus, an alleged debt collector may escape liability either by failing to qualify as a "debt collector" under the initial definitional language, or by falling within one of the exclusions. The plaintiff in an FDCPA claim bears the burden of proving the defendant's debt collector status. See <u>Zimmerman v. The CIT Group, Inc.</u>, Case No. 08–cv–00246–ZLW–KMT, 2008 WL 5786438, at *9 (D.Colo. October 6, 2008) (citing <u>Goldstein v. Hutton, Ingram, Yuzek, Gainen, Caroll & Bertolotti</u>, 374 F.3d 56, 60 (2d. Cir. 2004).

> The Act defines "debt collector" as:

>> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

> 15 U.S.C. § 1692a(6). See <u>Allen v. Nelnet, Inc.</u>, Case No. 06–cv–00586–REB–PAC, 2007 WL 2786432, at *8 –9 (D.Colo. Sept. 24, 2007). The Supreme Court has made it clear that the FDCPA applies to attorneys "regularly" engaging in debt collection activity, including such activity in the nature of litigation. <u>Heintz v. Jenkins</u>, 514 U.S. 291, 299 (1995). The FDCPA establishes two alternative predicates for "debt collector" status — engaging in such activity as the "principal purpose" of an entity's business and/or "regularly" engaging in such collection activity.  15 U.S.C. § 1692a(6).  It is clear from the evidence that debt collection is not Defendant Gelman's or his law firm's principal purpose, nor is debt collection the principal purpose of non-defendant CBR. <u>Goldstein</u>, 374 F.3d at 60 –61. Therefore the court must examine the issue from the regularity perspective. The <u>Goldstein</u> court directed

> Most important in the analysis is the assessment of facts closely relating to ordinary concepts of regularity, including (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations. Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity.... Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

Id. at 62–63.[1]

_____

[1]Goldstein referred to various analytical frameworks of other exemplary cases in its opinion: "To the extent that some courts confronted with the task of articulating an analytical framework for the regularity prong of the definition have suggested that such proportionality factors may alone be determinative, the facts of the particular cases often belie the implication. Where debt collector status was found lacking based on revenue or workload figures, other indicia of regularity often were also lacking; where debt collector status was found, the regularity and/or principal purpose criteria would in some cases easily have been met in any event. Compare Schroyer v. Frankel, 197 F.3d 1170, 1173, 1177 (6th Cir. 1999) (where firm handled 50-75 collection cases annually,

(continued...)

A starting point for analysis in this case is the Wadas Affidavit at Ex. 8.

Wadas avers she has been  a solo practitioner since 1994, doing business as

The Wadas Law Office, with no paralegal or employees hired for the purpose of

debt collection.  She represents that creditor collection is not a regular part of

her business.  She has never sent a demand letter on behalf of a debt collector.

---

[1](...continued)
constituting less than 2% of overall practice, maintained no non-attorney staff or computer aids for debt collection, and debt collection activity came from non-collection business clients and was "incidental to, and not relied upon or anticipated in," firm's practice of law, firm was not debt collector); White, 23 F. Supp.2d at 278 (lawyer who sent 35 collection letters once as favor to personal client and filed no follow-up litigation was not debt collector); Von Schmidt v. Kratter, 9 F. Supp.2d 100, 103-04 (D.Conn. 1997) (law firm whose total three-year revenues from debt collection were less than $1,000 and had only one consumer credit client was not debt collector); and Nance v. Petty, Livingston, Dawson, & Devening, 881 F. Supp. 223, 225 (W.D.Va. 1994) (collection work that constituted .61% of lawyer's personal practice and represented 1.07% of firm's cases over 18-month period did not render defendant law firm debt collector, where plaintiff provided no evidence of debt collection activity other than that complained of in action); with Scott v. Jones, 964 F.2d 314, 316-18 (4th Cir. 1992) (principal purpose and regularity prongs satisfied where lawyer and firm had regular ongoing relationship with delinquent debt division of credit card issuer, 70-80% of revenues were generated by such work over relevant period and over 4,000 "warrants" had been issued annually in connection with such work over five-year period). See also Garrett, 110 F.3d at 317 (rejecting district court finding that collection activity was not "regular" where 639 demand letters were mailed in nine-month period, although revenues from activity were less than 0.5% of firm's total for period). In light of Goldstein's proffer of specific evidence of debt collection activity in the form of 145 three-day notices issued in a one-year period, the district court's analysis was too narrow to support its determination that Hutton had not regularly engaged in debt collection."

(See also Ex. 7, interrogatory answers.) She has no special programs, software or other devices to assist with debt collection activities. See Ex. 8.

In her interrogatory responses (Ex. 7), Wadas indicates her primary areas of practice are family law, guardianships, conservatorships and criminal law. She has represented only one debt collector, Abby Shadakofsky, during her legal career. She has represented Shadakofsky and entered an appearance in eight litigation cases since 1996, although she does have a retainer agreement with Shadakofsky to represent her on an as-needed basis when assistance is requested in pursuing litigation actions. Since 1996, Wadas stated she has been involved in eleven other debt collection cases in which she represented the debtor and not the creditor. In the last ten years, Wadas informs the court that she has handled 1,769 cases in her law office and that only 6-8 of those involved representation of a debt collector. Less than 1% of her practice during that period has been devoted to representing a debt collector. In 2011, income received as a result of her representation of Shadakofsky was $1,700.00.

In his opposition, James urges the Court to examine the facts from the "regularity perspective." He disagrees with the contention that Wadas is not a debt collector. He points to apparent inconsistencies to support his position. For example, James argues that the representation in the Wadas affidavit that

10

she has represented Shadakofsky eight times in the past ten years is inconsistent with Shadakofsky's interrogatory answer indicating that Wadas had represented her eight times in the past five years, thus creating a disputed fact precluding summary judgment.   He posits it is likely that Wadas has represented "nontraditional debt collection businesses."   However, his assertions in this regard are completely devoid of any support in the record. At best, he seeks to have the Court engage in speculative imaginings that might somewhere, sometime, somehow, support his contentions. While it is possible that reasonable minds could reach different conclusions about what constitutes a debt collector, this is not what the law requires.  Furthermore, in the absence of admissible evidence offered to controvert the Wadas affidavit, James' speculative ruminations are not sufficient to defeat the instant motion for summary judgment.

There are no indicia that Wadas and The Wadas Law Office regularly render debt collection services.  There are no indicia that the principal purpose of the Wadas legal practice is debt collection.  Whether Wadas has represented Shadakofsky eight times in five or ten years is of little moment in making this determination.   Out of the 1,769 cases Wadas has handled in her practice in the last ten years, only 6-8 have involved representing a debt collector, or

11

0.0045% of her total practice during this entire time period -- a de minimis portion of her entire legal practice. Wadas's sworn affidavit and interrogatory answers indicate she has no support staff or computer aids for debt collection. She has never sent a demand letter on behalf of a debt collector. She has more often worked for debtors, rather than creditors, in litigation. It appears that the work for Abby Shadakofsky has not generated a significant revenue stream for the Wadas legal practice, although she and Wadas do have an agreement to provide assistance on an as-needed basis. There are no discernible patterns, either through debt collection communications or litigation, that support a finding that Wadas and The Wadas Law Office regularly engage in debt collection activity. James has offered no admissible evidence of any other debt collection activity that might plausibly support a finding that Wadas regularly engages in debt collection activities. He offers nothing contravening the evidence demonstrating that the principal purpose of this particular firm is not debt collection.[2]

---

[2]By way of an aside, it is apparent that James is most dissatisfied with the circuit court proceedings. It seems he has been unwilling to see the circuit court case through to its conclusion. His complaints in this case focus on events and actions that occurred in the circuit court. It is troubling that James did not avail himself of the full panoply of legal mechanisms that could have allowed the circuit court to address his concerns, including but not limited to questions

(continued...)

---

[2](...continued)

concerning the propriety of the untimely answer to the counterclaim. Rather, he elected to circumvent the circuit court and bring the instant action in federal court before there was a conclusive disposition in the circuit court. The circuit court had no opportunity to review the alleged procedural errors that are of particular concern to James. This Court is unable and unwilling to fashion any form of relief that would render a decision by the circuit court nugatory. He did not move the circuit court to strike the reply/answer to the counterclaim nor did he seek any other form of relief in that court. Even if he had disagreed with any disposition the circuit court might have made, it is worthwhile to note there are avenues available to challenge a circuit court's decisions, by way of the most obvious example, appeal to the district court. See e.g., Wyo. Stat. § 5-9-141.

No doubt things occurred in the circuit court that caused James concern, including the filing by Wadas as counsel for Shadakofsky of a response to the James counterclaim after entry of a default judgment. In his circuit court counterclaim, James asserted claims based on the FDCPA -- allegations remarkably similar to those in this case. The circuit court's default judgment on the counterclaim in favor of James and against Shadakofsky dba Personal Collection Service, entered on October 14, 2011, was in the amount of $1,000.00, plus interest thereafter at the rate of 10% per annum. The default judgment noted "Plaintiff failed to answer defendant's CounterClaim." Ex. 3. The reply to the counterclaim was filed October 31, 2011; it is not clear whether this was accomplished with leave of court. Ex. 4. On November 30, 2011 plaintiff's amended self-executing discovery was submitted. Ex. 5. On January 12, 2012, again in the circuit court, plaintiff's answers to the defendant's second set of interrogatories were submitted. Ex. 6. Nothing in the record suggests James himself ever did anything at all to bring these post-default judgment filings to the circuit court's attention. Indeed, it is not entirely clear why any of this matters here, in that James appears to have received a valid judgment in his favor on his counterclaim for a sum certain. That judgment has not been set aside. Instead, the above-captioned action was filed in this Court on December 8, 2011. The Court perceives this as a backdoor attempt to seek review of the circuit court's judgment on the counterclaim. The Court is hard pressed to see how the procedural wrangling supervised by the

(continued...)

13

The question of import now is whether Wadas is a debt collector under the FDCPA.  The Court's answer to that question is "no."  The plaintiff bringing an FDCPA claim bears the burden of proving the defendant's debt collector status. The burden has not been carried.  The plaintiff has offered no admissible evidence to contravene that offered by defendants.  He has engaged in random, unsupported speculation about the services that Wadas may provide in her legal practice, but little more.  This is not sufficient to preclude summary judgment in favor of the moving defendants in this case.

The Court finds that defendants Cheryl Wadas and The Wadas Law Office are entitled to summary judgment on all claims asserted against them by plaintiff James.   There is no genuine dispute of any material fact and the defendants are entitled to judgment as a matter of law.   Accordingly, it is therefore

**ORDERED** that the "Defendants Cheryl Wadas and Wadas Law Office's Motion for Summary Judgment" (Docket Entry 20) shall be, and is, **GRANTED.**

---

[2](...continued)
circuit court pertaining to James' counterclaim falls within the purview of the FDCPA.

**Judgment shall be entered accordingly in favor of defendants**

**Cheryl Wadas and Wadas Law Office.**

Dated this ___*13th*___ day of ___*September*___ 2012.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE

15